FILED

2017 Jan-04  PM 04:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | |
|---|---|
| **MAJOR STEPHENS,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | |
| ] | **CASE NO. 2:16-CV-274-KOB** |
| **CITY OF TARRANT, et. al.,** ] | |
| ] | |
| **Defendants.** ] | |
| ] | |
| ] | |

## MEMORANDUM OPINION

This § 1983 matter asserts federal claims against the City of Tarrant for excessive use of force; failure to train, supervise and investigate use of force with Taser; and failure to train, supervise, and investigate use of force with a patrol vehicle.  It comes before the court on the City's "Motion to Dismiss." (Doc. 8).   The Plaintiff filed a response (doc. 12), and the City had an opportunity to reply, but chose not to exercise that opportunity (doc. 14).

For the reasons stated in this Memorandum Opinion, the court WILL GRANT IN PART and DENY IN PART the motion.  More specifically, the court will grant the motion as to the claims in Count I asserted against the City under the substantive component of the Due Process Clause of the Fourteenth Amendment and the failure to investigate and discipline claim; the court will deny the motion as to the claim asserted against the City in Count I for the alleged failure to train and supervise regarding use of force involving Tasers.  Further, the court will grant the motion as to all claims asserted against the City in Count II of the Complaint.

1

# I.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*.   "Where a complaint pleads facts that are merely consistent with a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"
*Id*. (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has identified "two working principles" for the district court to use in applying the facial plausibility standard.  The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.   The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.  Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts.  That task  is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." Id.  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the court must dismiss the claim.  *Id.*

The court notes that the Plaintiff was incorrect when he asserted that "[t]he complaint should not be dismissed unless it appears that Plaintiff can prove <u>no</u> set of facts in support of his claim which would entitle him to relief."  (Resp. Br., Doc. 12 at 4 (quoting *Jenkins v. McKeithen,* 395 U.S. 411, 422 (1969) (emphasis added) which in turn quoted the language in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), *abrogated by Twombly,* 550 U.S. at 546*; also* citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) & *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986) for similar reiterations of the "no set of facts" pleading standard).  As the

United States Supreme Court subsequently explained, the "no set of facts" pleading standard "has earned its retirement" and "is best forgotten. . . ." *Twombly,* 550 U.S. at 546.  The Supreme Court clearly abrogated this standard in May of 2007, over nine years ago.  Plaintiff's counsel have no excuse for quoting it as current law, and doing so again[1] undermines the credibility of their legal arguments.

## II.  FACTS

The Complaint asserts the following facts that are relevant to the claims against the City.

On May 30, 2015, at approximately 2:00 P.M., the Plaintiff, Major Stephens, was standing in an apartment parking lot, unarmed, when Defendant Justin Willis, an officer with the City of Tarrant's police force, and another unidentified officer, drove the patrol vehicle toward Stephens.  When Stephens reacted to the sight of the approaching vehicle by leaving the lot on foot, the patrol car accelerated and went over the curb, striking Stephens and pinning him against a fence.

Stephens was able to extricate himself, and began to walk down the sidewalk, but then fell to the ground.  As he was lying on the ground, chest side down, Stephens put his hands out to the side so that they were visible to the officers.  The officers had access to his hands if they had chosen to place them in handcuffs, but they did not.

While Stephens was lying in that position, Officer Willis got down on his knee, face-to-

---

[1] This court advised Plaintiff's counsel in a prior case that the "no set of facts" was an incorrect standard: "Because the Supreme Court clearly abrogated this [no set of facts pleading] standard in May of 2007, over eight years ago, Plaintiff's counsel have no excuse for quoting it as current law, and they need to delete it from future briefs . . . ." *Dubose v. City of Hueytown,* Case No. 2:15-CV-852-KOB (N.D. Ala.) (doc. 20, at 6-7 entered August 24, 2015).

face with Stephens, and shot him in the face with his Taser without ever attempting to handcuff him. One prong of the Taser punctured Stephens's right eyeball, while other prongs shot over Stephens's head, missing him. Officer Willis used the Taser to discharge an electrical current into Stephens head and eyeball for several seconds. Other Tarrant and Birmingham police officers appeared after the Taser strike but did not intervene, although they had the ability to do so.

As a result of the Taser shot to his eye, Stephens has undergone extensive treatment at UAB, the Callahan Eye Foundation, and the Lions Eye Clinic, ultimately resulting in the removal of Stephens's right eye.

The Complaint states that the City of Tarrant has a history of excessive force, but does not provide any specific incidents of excessive force prior to the incident made the basis of this suit on May 30, 2015. It also states that the City has "created an atmosphere of tolerance regarding willful, wanton and improper behavior among officers that has resulted in a reputation of excessive use of force and violent behavior in the community causing citizens to be fearful for their safety and well being"; however, to support that broad statement, it provides no specific facts or prior instances of City police officers using excessive force. Doc. 1, at 5 ¶ 23.

The Complaint further states that the City has failed to train, supervise and investigate its officers in the following areas: (1) failure to provide adequate training and supervision of Defendant police officers in the use of force and detaining suspects, including use of force involving tasers and police vehicles; (2) failure to provide adequate training and supervision of Defendant police officers in the use of force after having notice of the claims made the basis of this suit; (3) after having notice of the claims made the basis of this suit, failure to adequately

5

investigate those claims; and (4) after having notice of the claims made the basis of this suit,

failure to institute corrective discipline of Officer Willis.  Doc. 1, at 6, ¶ ¶ 25, 26, 31.

Finally, the Complaint alleges the existence of the following systemic deficiencies

resulting in a widespread history of the City's officers using excessive force:

> a.  failing to implement policies, procedures and practices regarding use of force that appropriately guide and monitor the actions of Tarrant Police Officers; and
> b.  failing to supervise Tarrant Police Officers adequately to prevent the reoccurrence of the use of excessive force.

Doc. 1, at 6 ¶ 27, at 8 ¶ 34.

## III.  DISCUSSION

A.  Housekeeping Matters

1.  State Claims

In his response, Mr. Stephens confirms he has asserted no claims under state law against

the City of Tarrant; therefore, the claims alleged in Count V (Tort of Outrage) and Count VI

(Assault and Battery) are not brought against the City.  To the extent that the motion requests the

dismissal of those claims against the City, the court FINDS that request to be MOOT.

2.  False Imprisonment Claim

In his response, Mr. Stephens confirms that he has asserted no false imprisonment claim

against the City, either as a violation of state law or of the federal Constitution.  To the extent that

the motion requests the dismissal of Count VII's false imprisonment claim against the City, the

court FINDS that request to be MOOT.

3.  Claims for Punitive Damages

In his response, Mr. Stephens confirms that he does not claim punitive damages against the

City.  To the extent that the motion requests the dismissal of all claims for punitive damages, the

court FINDS that request to be MOOT.

B.   Fourteenth Amendment Claims

In his Complaint, Mr. Stephens claims deprivation of rights guaranteed by the Fourth and

Fourteenth Amendments to the Constitution of the United States, brought pursuant to § 1983 and

§ 1988.  The City asks this court to dismiss excessive force claims brought under the Fourteenth

Amendment, asserting that this court should analyze the excessive force claims under the Fourth

Amendment.  Mr. Stephens argues, on the other hand, that because the substantive component of

the Fourteenth Amendment's Due Process Clause applies to excessive force in pretrial detention

situations after seizure and arrest are completed, and because the Eleventh Circuit has not precisely

set when seizure ends and pretrial detention begins, this court should not dismiss his claims under

the Fourteenth Amendment.  Therefore, the court must first determine whether the Plaintiff

properly invokes both the Fourth and the Fourteenth Amendment, and if not, the court must

determine under which Amendment he may travel.

The Eleventh Circuit has explained that "[t]he Fourth Amendment is applicable to the state

and local governments under the Due Process Clause of the Fourteenth Amendment."  *Reese v.*

*Herbert,* 527 F.3d 1253, 1261 n. 11 (11th Cir. 2008) (citing *Mapp v. Ohio,* 367 U.S. 643, 655

(1961)).  To the extent Mr. Stephens invokes the Fourteenth Amendment to acknowledge that the

City is a local, and not a federal, government and that the Fourteenth Amendment's Due Process

Clause is the vehicle for the Fourth Amendment's protections to apply to the City's action, then the

invocation is proper.  However, to the extent that Mr. Stephens attempts to bring a claim for

excessive force under the substantive component of the Due Process Clause, the court rejects that

argument for the reasons discussed below.

In the instant case, Mr. Stephens confirms that he alleges two instances of excessive force: "when a Defendant City Officer pinned [Mr. Stephens] to the fence with the police vehicle, and [ ] when a Defendant City Officer Tased him in the eye without attempting to arrest him." (Pl.'s Br. Doc. 12, at 13). According to the Complaint and Mr. Stephens's brief, both of these instances occurred during an investigatory stop and *before arrest*, and at no point before these incidents had the Defendant Officer attempted to place him in handcuffs; the officer certainly had not completed the arrest process.

The Supreme Court of the United States has held explicitly that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor,* 490 U.S. 386, 395 (1989) (emphasis in original). In keeping with that directive, the Eleventh Circuit has repeatedly analyzed such cases under the Fourth Amendment and not under both the Fourth and Fourteenth Amendments.

For example, in *Reese v. Herbert,* the Court of Appeals acknowledged that the Plaintiff asserted excessive force under both the Fourth Amendment and the substantive component of the Due Process Clause of the Fourteenth Amendment when the force allegedly occurred during the arrest process, but the Court analyzed the claim only under the Fourth Amendment's "reasonableness" standard. 527 F.3d at 1261 n. 11 (quoting the above passage from *Graham v. Connor* as support). *See also Mobley v. Palm Beach Cty. Sheriff Dep't.,* 783 F.3d 1347, 1353 (11th Cir. 2015) (analyzing under the Fourth Amendment excessive force that allegedly occurred in

the course of apprehension and arrest and before the plaintiff was handcuffed, explaining that "the Supreme Court held that the test for excessive force during an arrest is *objective* reasonableness under the Fourth Amendment" (emphasis in original)); and *Garrett v. Athens-Clarke Cnty.,* 378 F.3d 1274, 1279 n. 11 (11th Cir. 2004) (quoting *Gutierrez v. City of San Antonio,* 139 F.3d 441, 452 (5th Cir. 1998), for the following proposition: "Fourteenth Amendment analysis does not begin until '*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time.'" (emphasis in *Gutierrez*)).

As these cases reflect, Mr. Stephens's argument is wrong that controlling law does not precisely answer the question of  which Amendment controls the analysis of his excessive force claim.  Based on the allegations of his Complaint, the alleged excessive force occurred during the process of being apprehended and before the arrest was completed.  The Supreme Court and Eleventh Circuit have directed courts to analyze such claims under the Fourth Amendment's objective reasonableness standard, and this court will do so.  Accordingly, the court WILL DISMISS any claims against the City brought under the substantive component of the Due Process Clause of the Fourteenth Amendment.

C.  Section 1983 Claims against the City

Section 1983 provides that every person, who, under color of state law, deprives another person of Constitutional rights, shall be liable to that injured party. 42 U.S. § 1983.  The Supreme Court has rejected municipal liability under § 1983 based on the theory of *respondeat superior*. *Monell v. Dep't of Social Services,* 436 U.S. 658, 693-94 (1978).   Rather, "recovering from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts

which the municipality has officially sanctioned or ordered." *Pembaur v. Cincinnati,* 475 U.S. 469, 479-80 (1986). "A 'municipal act' is not, however, limited to decisions made by the city's official legislative body or in written agreements." *Brown v. City of Fort. Lauderdale,* 923 F.2d 1474, 1480 (11th Cir. 1991)

The Eleventh Circuit has explained that municipal liability may be based on the following: (1) the decision of a person with "final policymaking authority" for the city (*see City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988)); (2) an express municipal policy, such as an ordinance, regulation, or policy statement; or (3) a "'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'" (*see Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1308 (11th Cir. 2001) (acknowledging that municipal liability can arise based on a formal policy or custom, using the quoted language from *Brown,* 923 F.2d at 1481)). "[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct.'" *Griffin,* 261 F.3d at 1308 (quoting *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir. 1987)). When municipal liability is based upon a custom or policy, that custom or policy must be "'the moving force of the constitutional violation.'" *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 819 (1985) (quoting *Monell,* 436 U.S. at 694-95 and *Polk Cty. v. Dodson,* 454 U.S. 312, 326 (1981)) .

The Complaint asserts two counts against the City: Count I's claim that the City failed to train and supervise its officers regarding the use of force with a Taser, and that the City failed to investigate and discipline its officers for the incident made the basis of this suit involving the use

of force with a Taser; and Count II's claim that the City failed to train and supervise its officers regarding the use of force with a patrol vehicle, and that the City failed to investigate and discipline its officers for the incident made the basis of this suit involving the use of force with a patrol vehicle.  The allegations in these counts refer neither to an express municipal policy nor to a decision from a final policymaker who was aware of a need to train, supervise, and investigate  in a particular relevant area *before* the occurrences made the basis of this suit.[2]  Rather, they refer generally to an "atmosphere of tolerance" of excessive force, "a widespread history of excessive force," and "systematic deficiencies" that include the failure to act—the failure to implement policies, procedures and practices regarding use of force and the failure to supervise to prevent recurrences of excessive force.  Accordingly, the court's discussion will focus on municipal liability based on custom and practice arising from a past pattern of constitutional deprivations and the City's deliberate indifference to the need to train and supervise to avoid further constitutional deprivations.

    1. Count I's failure to train, supervise and investigate regarding use of force with a Taser

        a. Failure to train and supervise

Recognizing that the "failure to train" and "failure to supervise" are often interrelated omissions, the Eleventh Circuit explained that the court's proper focus in addressing these interrelated claims is on the "element common to both claims: the alleged failure to train."  *Kerr v.*

---

[2] The court notes that Counts I and II of the Complaint state that the Defendant City and Defendant Chief failed to train, supervise, discipline, and investigate.  The Complaint also states that the Defendant Chief is the final policymaker for the City and is responsible for the training, supervising and disciplining City officers.  However, no allegations in the Complaint state that, prior to the May 30, 2015 incident made the basis of this suit, the *Chief* was aware of the need to train, supervise, discipline, and investigate: the allegations of such awareness focus on the *City*.

*City of West Palm Beach,* 875 F.2d 1546, 1555 (11th Cir. 1989). A city's failure to train a police officer rises to the level of a municipal custom or policy only in the "limited circumstances" when its failure shows a "'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989).

To establish deliberate indifference, a plaintiff must show "that the municipality knew of a need to train . . . *in a particular area* and the municipality made a deliberate choice not to take any action." *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1293 (11th Cir. 2009) (emphasis supplied). A plaintiff may establish deliberate indifference in two ways: by showing "[a] pattern of similar constitutional violations by untrained employees" ("prior pattern liability," which is the normal way of showing deliberate indifference) or by showing that the need to train was "obvious" despite the existence of prior similar constitutional violations ("single incident liability," available in a narrow set of circumstances). *Connick v. Thompson,* 563 U.S. 51, 62 (2011). "'Where the [officer's] proper response . . . is obvious to all without training or supervision, then the failure to train or supervise'" does not generally show deliberate indifference. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quoting with approval *Walker v. City of New York,* 974 F.2d 293, 299-300 (2nd Cir. 1992), *cert. denied,* 507 U.S. 972 (1993)). Therefore, a city may "rely on the common sense of its [police officers] not to engage in . . . criminal conduct," but "a pattern of known misconduct . . . may be sufficient to change reasonable reliance [on the officers' common sense] into deliberate indifference." *Floyd v. Waiters,* 133 F.3d 786, 796 (11th Cir. 1998), *vacated on other grounds by* 525 U.S. 802 (1998), *reinstated by* 171 F.3d 1264 (11th Cir. 1999).

*Prior Pattern Liability*

With that background, the court turns to the Complaint in the instant case.  In Count I, Mr. Stephens alleges that the City failed to provide its officers with adequate training in the use of force, including in the use of Tasers.  The court reiterates that the mere fact that officers were inadequately trained does not implicate municipal liability; to be deliberately indifferent, the City must have had notice prior to the acts made the basis of this suit of a need to train or supervise, and yet, failed to train and supervise despite that notice.

As to prior pattern liability, the Complaint states no well-pled *facts* supporting a prior pattern of similar constitutional violations by untrained and/or unsupervised employees.  It does allege generally  an atmosphere of "improper behavior among officers that has resulted in a reputation of excessive force and violent behavior in the community," but that very general, conclusory statement does not provide information about what the behavior was, whether it was before or after the incident in question, or whether it involved the use of Tasers.  To provide the notice of a need to train in a particular area that is necessary for deliberate indifference, prior constitutional violations must be *similar* in nature to the one made the basis of the suit.  *See Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1328 (11th Cir. 2015) (stating that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary" and requiring *facts* to establish notice instead of conclusory allegations that notice existed); *Mercado v. City of Orlando,* 407 F.3d 1152, 1162 (11th Cir. 2005) (finding no municipal liability when the plaintiff could not show that any other prior complaints of excessive force involved "factual scenarios that were substantially similar" to the incident in that suit).

Here, the Complaint certainly does not state that the prior improper behavior involved the

use of Tasers.  The general allegation of unspecified excessive force in an unspecified time frame

is not a well-pled fact, and, in any event, the excessive force, whatever it may have been, could

have involved any number of actions—shooting, punching, placing someone in a choke-hold,

etc.—that would not place the City on notice that it needed to provided Taser training or that its

officers needed supervision when they used Tasers.  Therefore, the court FINDS that the Complaint

does not sufficiently allege that the City had notice of a need to train or supervise based on a prior

pattern of similar constitutional violations.

   The court acknowledges Mr. Stephens's argument that he has provided enough facts to

suffice until further discovery fleshes out his general, conclusory claims.  (*See* Pl.'s Br. Doc. 12 at

5).  However, the rules of federal pleading do not allow plaintiffs to plead general and conclusory

allegations without supporting *facts*.  The discovery process should not be a fishing expedition to

learn if the speculative, conclusory allegations have any basis in fact.  *See Iqbal,* 556 U.S. at 679-

80 ("Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

   In addition, Mr. Stephens's alleged constitutional deprivations on May 30, 2015 by City

officers does not mean that the City must have failed to train, discipline, and supervise prior to that

date, and must be guilty of deliberate indifference.  (*See* Pl.'s Br. Doc. 12, at 11).   The Supreme

Court of the United States has instructed that "adequately trained officers occasionally make

mistakes" and "the fact that they do says little about the training program . . . ." *City of Canton,* 489

U.S. at 391.  Therefore, mere allegations of constitutional deprivation by officers, standing alone,

do not support a claim against a *city* for failure to train claim or for deliberate indifference.  Such

an argument is, in effect, calling for the imposition of *respondeat superior* liability, which, as

discussed above, is a theory of liability that the Supreme Court has repeatedly refused to impose

under section 1983 for municipal liability.  Instead, a well pleaded complaint against a city must

allege that the city is liable because of its *own* illegal actions.

Therefore, the allegations are insufficient to state such a claim against the City.

*Single-Incident Liability*

Even if the Complaint does not sufficiently allege a prior pattern, the court should consider

whether it sufficiently states a claim against the City for single-incident liability.  The Supreme

Court in *City of Canton* first hypothesized this theory as viable when "the need for more or

different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights, that the policymakers of the city can reasonably be said to have been

deliberately indifferent to the need." 489 U.S. at 390.  It gave as an example in dictum the

"obvious" need "to train officers in the constitutional limitations on the use of deadly force."  *See*

*id.* at n. 10.  Then, in *Board of the County Commissioners of Bryan County v. Brown*, the Supreme

Court provided the following clarification of hypothetical single-incident liability:

> In leaving open in *Canton* the possibility that a plaintiff might succeed in
> carrying a failure-to-train claim without showing a pattern of constitutional
> violations, we simply hypothesized that, in a narrow range of circumstances,
> a violation of federal rights may be a highly predictable consequence of a
> failure to equip law enforcement officers with specific tools to handle
> recurring situations.  The likelihood that the situation will recur and the
> predictability that an officer lacking specific tools to handle the situation will
> violate citizens' rights could justify a finding that policymakers' decision not
> to train the officer reflected "deliberate indifference" to the obvious
> consequence of the policymakers' choice-namely, a violation of a specific
> constitutional or statutory right.

520 U.S. at 409.

In the instant case, Mr. Stephens argues that the need for training in the use of Tasers is

so obvious and constitutional deprivations are so likely to result from a failure to train that he need show no prior pattern of constitutional abuses with Tasers. (Doc. 1, at 6 ¶ 25).

Unfortunately, the City did not address single-incident liability in its brief and chose not to reply to Mr. Stephens's brief; therefore, it did not discuss at all this narrow theory of liability. No controlling authority has specifically addressed whether the failure to train in the use of Tasers fits within the single incident theory where the need for training is "so obvious."  If Tasers represent "deadly force," then their use without training would arguably fall within the *Canton* hypothetical.  The Eleventh Circuit has described the use of a Taser as "nonlethal" force in addressing excessive force claims against police officers but not in the context of a failure to train claim and may have been referring to the fact that the Taser use did not kill the suspect in that particular case.  *See Smith v. LePage,* 834 F.3d 1285, 1295 (11th Cir. 2016).  In an unpublished case addressing whether a city officer was guilty of excessive force in using a beanbag gun but not addressing a failure to train claim, the Eleventh Circuit characterized the use of a Taser gun as something *other* than deadly force, explaining that a beanbag gun "lies in the unwashed middle somewhere between deadly force [involving handguns] and the use of a Taser gun."  *Glenn v. City of Columbus,* 375 F. App'x 928, 933 (11th Cir. 2010) (*per curiam*) (reversing a denial of the officers' motion for summary judgment); *see also Gilliam ex. rel. Waldroup v. City of Prattville,* 667 F. Supp. 2d 1276, 1293 (M.D. Ala. 2009) (addressing the officers' motion for summary judgment, finding that the failure to re-train officers in the use of their Tasers does not fall within the Supreme Court's hypothetical "so obvious" exception because "the use of a taser is not presumptively the use of deadly force" and also emphasizing that the allegedly deficient policy was in failing to *re-train* officers yearly in Taser use: "this is

not a case where the City provided no training at all"), *rev'd on other grounds,* 639 F.3d 1041

(11th Cir. 2011) (finding that the excessive force claim did not survive Gilliam's death).

The court notes that the danger associated with the use of Tasers depends upon the

circumstances of their use.  A perusal of the cases that the Eleventh Circuit has addressed

involving Tasers indicates that the force emanating from them sometimes can be deadly but does

not always cause serious injury.  *Compare* cases involving no serious injury (*Anthony v. Coffee

Cty.,* 579 F. App'x 760, 765-66 (11th Cir. 2014) (*per curiam*) (shock did not cause serious

injury; affirming the grant of summary judgment in favor of the county); *Draper v. Reynolds,* 369

F.3d 1270, 1278 (11th Cir. 2004) (officer Tasered uncooperative, belligerent suspect once with

no resulting serious injury; affirmed grant of summary judgment in favor of sheriff)) *with* cases

resulting in alleged serious injury and/or death (*e.g., Wate v. Kubler*, 839 F.3d 1012, 1020-21

(11th Cir. Oct. 12, 2016) (suspect died as a result of asphyxia and blunt trauma two days after

receiving multiple shocks from stun gun, and a genuine issue of material fact existed that the last

shocks occurred after he stopped resisting; the only claims addressed on appeal were those

against the individual officer); *Oliver v. Fiorino,* 586 F.3d 898, 905-07 (11th Cir. 2009) (officer

Tasered a suspect up to a dozen times over two minutes and he died as a result of being

repeatedly struck by the Taser; the only claims addressed on appeal were those asserted against

the officers); *Boynton v. City of Tallahassee,* 650 F. App'x 654, 660 (11th Cir. May 24, 2016)

(officer Tasered suspect nine times who was lying immobile on floor of the ambulance and only

tensed his body*;* suspect claimed neurological damage to his lumbar spine; the court affirmed the

grant of summary judgment in favor of the city)).

The court recognizes the narrowness of this "so obvious" exception and the reluctance of

17

the Eleventh Circuit to extend failure-to-train liability to other scenarios.  *See Borton v. City of Dothan,* 734 F. Supp. 2d 1237, 1256 (M.D. Ala. 2010) (citing, e.g., *Lewis v. City of West Palm Beach,* 561 F.3d 1288, 1293 (11th Cir. 2009) and *Gold,* 151 F.3d at 1352, as examples of the Eleventh Circuit's repeated refusal to extend failure to train liability beyond the Supreme Court's deadly force example).  However, given the fact that the Eleventh Circuit has not yet, in a published opinion, specifically addressed and resolved whether training in the use of Tasers fits within the "so obvious" exception and, further, given that the City failed to reply to this argument, the court FINDS that the City has not met its burden on its motion to dismiss as to these claims in Count I.  As movant, the City must establish that the Complaint does not sufficiently allege facts showing notice of the need to train and supervise, and it failed to meet its burden to do so.

*Moving Force*

As stated previously, to recover on a failure to supervise or failure to train claim, a plaintiff must show that the failure to train or supervise its officers was a moving force behind the constitutional violation.  To be a moving force, the failure to train or other custom or practice must have a causal relationship with the constitutional injury suffered.  *See Owens v. City of Atlanta,* 780 F.2d 1564, 1567 (11th Cir. 1986).

The City claims that the Complaint here has not provided facts reflecting that the failure to train and supervise was the moving force behind the constitutional violations.  The court disagrees: *if* the need to provide training for Taser use was an *obvious* one that required no prior pattern to place the City on notice of the need—and the City has not met its burden as to this issue—then the court finds that the facts alleged in the Complaint, if true, could establish that the

18

failure to train and supervise was the moving force behind the claimed constitutional violations. Here, the facts alleged are that the officer got down on his knee, and, when he was face-to-face with Stephens as Stephens was lying chest-down on the ground, unarmed and unresisting, he shot Stephens in the face with the Taser, puncturing him in his right eyeball.  One reading of the Complaint is that the City failed to provide any Taser training to its officers. The court WILL DENY the motion to dismiss as to the claim against the City for its alleged failure to train and supervise regarding use of force involving Tasers.

### b.  Failure to Investigate

As to the claim for failure to investigate, the Complaint refers only to the failure to investigate the claim made the basis of this suit and the failure to take corrective measures and discipline Officer Willis for the alleged actions made the basis of this suit.  Because those alleged failures occurred *after* the incident sued upon, any alleged policy of deliberate indifference based on such failures could not have caused or contributed to, or been the moving force behind, the alleged constitutional violation on May 30, 2015.  Therefore, the court FINDS that the motion to dismiss the claim for failure to investigate and discipline set forth in Count I is due to be GRANTED.

### 2.  Count II's failure to train, supervise and investigate regarding use of force with a police vehicle

### a.  Failure to train and supervise

Count II suffers from many of the same pleading problems as Count I.  The wording in many paragraphs of Count II is identical to corresponding paragraphs in Count I except for a substitution regarding the type of use of force: Count II refers to use of force involving patrol

vehicles instead of Tasers.  Once again, the Complaint states no well-pled *facts* supporting a prior pattern of similar constitutional violations by untrained and/or unsupervised employees involving patrol vehicles.  Therefore, the court FINDS that the Complaint does not sufficiently allege that the City had notice of a need to train or supervise based on a prior pattern of similar constitutional violations.

As to single incident liability, Mr. Stephens has provided the court with no support for the court's extending this "narrow" failure to train liability to the use of police vehicles.   Officers generally come to the job with prior skill and experience in operating vehicles, and, without the existence of prior pattern of incidents showing a deficiency in this skill, the City has a right to rely on officers using experience and their own common sense without a need to train in such a common skill.  *See Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quoting with approval *Walker v. City of New York,* 974 F.2d 293, 299-300 (2nd Cir. 1992) ("'Where the [officer's] proper response . . . is obvious to all without training or supervision, then the failure to train or supervise'" does not generally show deliberate indifference.), *cert. denied,* 507 U.S. 972 (1993)). A city may "rely on the common sense of its [police officers]" unless a pattern of known misconduct changes reasonable reliance on officers' common sense to deliberate indifference.  *See Floyd v. Waiters,* 133 F.3d 786, 796 (11th Cir. 1998), *vacated on other grounds by* 525 U.S. 802 (1998), *reinstated by* 171 F.3d 1264 (11th Cir. 1999).

To the extent that the Complaint in the instant case alleges that the City officers' use of police vehicle in the incident made the basis of this suit was obviously improper and fell outside the bounds of common sense, such allegations would not support a claim of deliberate indifference on the part of the City for failure to train and supervise without a prior pattern of

similar events showing notice of a need to train in this area.  The court FINDS that Count I of the Complaint does not sufficiently allege that the City had notice of a need to train or supervise regarding use of force with a patrol vehicle, and further, that any failure on the part of the City was the moving force behind an alleged Constitutional violation.  Accordingly, the court WILL DISMISS those claims.

> ### b.  Failure to investigate

As before, the Complaint refers only to the failure to investigate the incident made the basis of this suit and the failure to take corrective measures and discipline Officer Willis for the alleged actions made the basis of this suit.  Because those alleged failures occurred *after* the incident sued upon, any policy of deliberate indifference based such failures could not have caused or contributed to, or been the moving force behind, the alleged constitutional violation on May 30, 2015.   Therefore, the court FINDS that the motion to dismiss the claim for failure to investigate and discipline set forth in Count II is due to be GRANTED; therefore, the court WILL DISMISS that claim and no further claims will then remain in Count II.

## IV.  CONCLUSION

For the reasons stated above, the court WILL ORDER as follows:

A.  Count I

1.  The court FINDS that the claims asserted in Count I under the substantive component of the Due Process Clause of the Fourteenth Amendment are due to be dismissed; the court WILL GRANT the motion as to those claims.

2.  The court FINDS that the claim asserted in Count I for failure to investigate and discipline is due to be dismissed; the court WILL GRANT the motion as to that claim.

3.   The court FINDS that the City has *not* met its burden as movant to establish that the claim asserted against it in Count I for failure to train and to supervise in the use of a Taser in violation of the Fourth Amendment is due to be dismissed; the court WILL DENY the motion as to that claim, and that claim is the only one that will remain against the City in this case.

B.  Count II

1.   The court FINDS that the claims asserted in Count II under the substantive component of the Due Process Clause of the Fourteenth Amendment are due to be dismissed; the court WILL GRANT the motion as to those claims.

2.   The court FINDS that the claims asserted in Count II for failure to train, supervise, investigate and discipline regarding the use of a patrol vehicle are due to be dismissed; the court WILL GRANT the motion as to those claims.

No claims will remain in Count II, and Mr. Stephens asserts  no claims against the City in Counts III-VII.   This case will proceed with the remaining claim in Count I asserted against the City, the alleged failure to train and supervise regarding use of force involving Tasers, and with the claims asserted against the other Defendants.

Dated this 4th day of January, 2016.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE